UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| LORI A. SIMERMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO. 1:22-cv-00027-SLC |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Plaintiff Lori A. Simerman ("Simerman") appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying her application under the Social Security Act (the "Act") for Disability Insurance Benefits ("DIB"). (ECF 1). For the following reasons, the Commissioner's decision will be remanded.

**I. FACTUAL AND PROCEDURAL HISTORY**

Simerman applied for benefits on January 7, 2020, alleging disability beginning June 4, 2019. (ECF 10 Administrative Record ("AR") 15, 206-07). Simerman's claim for DIB was denied initially and upon reconsideration. (AR 70-99). After a timely request (AR 119-20), a hearing was held on July 22, 2021, before administrative law judge ("ALJ") Kathleen Winters, at which Simerman, represented by counsel, and a vocational expert ("VE") testified (AR 34-69). On August 9, 2021, the ALJ rendered an unfavorable decision to Simerman, concluding that she is not disabled because she can perform her past relevant work. (AR 15-29). Simerman's request for review was denied by the Appeals Council (AR 1-6), at which point the ALJ's decision became the final decision of the Commissioner, *see* 20 C.F.R. § 404.981.

Simerman filed a complaint with this Court in January 2022, seeking relief from the Commissioner's decision. (ECF 1). In her appeal, Simerman alleges that the ALJ: (1) erred in analyzing her subjective symptoms, (2) erred in evaluating medical opinion evidence, (3) failed to include limitations related to mental impairments, (4) failed to properly account for her physical limitations, and (5) erred in relying on the VE testimony related to skilled and unskilled work. (ECF 12 at 6-26).

On the date of the ALJ's decision, Simerman was fifty-four years old (AR 70), and the ALJ found that she is capable of performing her past relevant work as a retail store manager and head correctional officer (AR 28). In her application, Simerman alleged disability due to multiple sclerosis (MS), stenosis of the lumbar and cervical spine, hypothyroidism with removal of the thyroid due to Graves, migraines, joint pain, possible bilateral carpal tunnel syndrome, and depression. (AR 233).

## II.  STANDARD OF REVIEW

Section 405(g) of the Act grants this Court the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed "only if [it is] not supported by substantial evidence or if the [ALJ] applied an erroneous legal standard." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (citation omitted).

To determine if substantial evidence exists, the Court "review[s] the entire administrative record, but do[es] not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Id.* (citations omitted). "Rather, if the findings of the Commissioner . . . are supported by substantial evidence, they are conclusive." *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (citation omitted). "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

## III.  ANALYSIS

### A.  The Law

Under the Act, a claimant seeking DIB must establish that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical,

2

physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence: (1) whether the claimant is currently unemployed in substantial gainful activity, (2) whether she has a severe impairment, (3) whether her impairment is one that the Commissioner considers conclusively disabling, (4) whether she is incapable of performing her past relevant work, and (5) whether she is incapable of performing any work in the national economy.[1] *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001); *see also* 20 C.F.R. § 404.1520. An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford*, 227 F.3d at 868.

## B. The Commissioner's Final Decision

On August 9, 2021, the ALJ issued a decision that ultimately became the Commissioner's final decision. (AR 15-29). First, the ALJ found that Simerman meets the insured status requirements of the Social Security Act through December 31, 2024. (AR 18). At step one, the ALJ concluded that Simerman has not engaged in substantial gainful activity since July 4, 2009, her alleged onset date. *Id.* At step two, the ALJ found that Simerman has the following severe impairments: status post ACDF/fusion of the cervical spine, degenerative disc disease of the lumbar spine with stenosis, MS, obesity, and headaches. (AR 21). The ALJ also found that Simerman has the following non-severe impairments: right carpal tunnel syndrome, bilateral ulnar neuropathy, and depression. (AR 18).

At step three, the ALJ concluded that Simerman does not have an impairment or combination of impairments severe enough to meet or equal a listing. (AR 21). Before proceeding to step four, the ALJ

---

[1] Before performing steps four and five, the ALJ must determine the claimant's residual functional capacity ("RFC") or what tasks she can do despite her limitations. 20 C.F.R §§ 404.1520(e), 404.1545(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. § 404.1520(e).

determined that Simerman's symptom testimony was not entirely consistent with the medical evidence and other evidence of record with respect to her limitations. (AR 27-28). The ALJ assigned Simerman the following RFC:

> [T]he claimant has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) except she can occasionally climb stairs or ramps, stoop, kneel, or crouch; and can never climb ladders, ropes, scaffolds, crawl, or balance as the term is used vocationally. Work with a moderate level of noise. Can frequently handle or finger bilaterally. Occasional concentrated exposure to vibration, dangerous moving machinery, and unprotected heights. Work with an option to change positions no more frequently than every 30 minutes, while remaining on task.

(AR 22). The ALJ found at step four that Simerman is able to perform her past relevant work. (AR 28). Therefore, Simerman's application for DIB was denied. *Id.*

### C. Medical Opinion Evidence

Simerman alleges that the ALJ failed to properly analyze and consider the opinion of psychological consultative examiner, Leslie Predina, Ph.D., H.S.P.P. (ECF 12 at 12). For the following reasons, Simerman's arguments – specifically as to the errors made in analyzing Dr. Predina's opinion – are persuasive.

Under the prior regulations, "more weight [was] generally given to the opinion of a treating physician because of his greater familiarity with the claimant's conditions and circumstances." *Clifford*, 227 F.3d at 870 (citations omitted); *see* 20 C.F.R. § 404.1527(c)(2). This so called "treating physician rule," however, was eliminated for claims – such as Simerman's – filed after March 27, 2017. *McFadden v. Berryhill*, 721 F. App'x 501, 505 n.1 (7th Cir. 2018). "Opinion evidence is now governed by 20 C.F.R. §§ 404.1520c, 416.920c (2017)." *Id.* The ALJ no longer assigns "any specific evidentiary weight" to medical opinions, but rather she evaluates the persuasiveness of medical opinions. 20 C.F.R. § 404.1520c. When considering the persuasiveness of any medical opinion, an ALJ must now consider the following factors:

> supportability; consistency; relationship with the claimant, including the length of the treatment relationship, frequency of examination, purpose of the treatment relationship, extent of the treatment relationship, and examining relations; specialization; and any other factors that tend to support the medical opinion, including evidence that the medical source is familiar with other medical evidence or has an understanding of social security policies.

*Inmam v. Saul*, No. 1:20-CV-231 DRL, 2021 WL 4079293, at *2 (N.D. Ind. Sept. 7, 2021) (citing 20 C.F.R. §§ 404.1520c(c), 416.920c(c)).

"The regulations state that supportability and consistency are the most important factors to consider, and that the other three factors only require discussion if it is appropriate for the determination." *Etherington v. Saul*, No. 1:19-CV-475-JVB-JPK, 2021 WL 414556, at *3 (N.D. Ind. Jan. 21, 2021), *R. & R. adopted by Bart E. v. Saul*, No. 1:19-CV-475-JVB-JPK, 2021 WL 411440 (N.D. Ind. Feb. 5, 2021). "Supportability" means that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion or prior administrative medical finding(s), the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1).

An ALJ cannot "cherry-pick" evidence supporting one outcome, while failing to address evidence that would undercut her determination. *Etherington*, 2021 WL 414556, at *4; *see also Bates v. Colvin*, 736 F.3d 1093, 1099 (7th Cir. 2013); *Garfield v. Schweiker*, 732 F.2d 605, 609 (7th Cir. 1984). In other words, while the ALJ is free to weigh conflicting opinion evidence, *see Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004), "[she] may not ignore entire lines of contrary evidence," *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012) (collecting cases). At the same time, "[w]hen an ALJ denies benefits, [she] must build an accurate and logical bridge from the evidence to her conclusion, and [she] may not 'play doctor' by using [her] own lay opinions to fill evidentiary gaps in the record." *Chase v. Astrue*, 458 F. App'x 553, 556-57 (7th Cir. 2012) (citations and internal quotation marks omitted).

The ALJ discussed the opinion provided by Dr. Predina in her explanation of why she found Simerman's mental impairments to be non-severe. (AR 20). Dr. Predina provided an opinion on August 10, 2020. (AR 420). Dr. Predina found Simerman's affect to be flat, and she "briefly cried during the interview." (AR 422). Dr. Predina noted that her mood suggested feelings of depression, and her ability to sustain her concentration and persistence appeared to be impaired. *Id.* Simerman made two errors in serial sevens after giving only five responses in ninety seconds. (AR 423). Dr. Predina opined that Simerman has "some issues with her level of cognitive functioning," although also found that she "appears to have the cognitive ability to perform comparable jobs to that which she has performed in the

5

past." (AR 424). Dr. Predina also opined that Simerman's judgment, common sense, and orientation are slightly impaired, and that her concentration and persistence appeared to be impaired. *Id.* Dr. Predina further opined that Simerman's general performance on the Wechsler Memory Scale does not suggest deficits with regard to memory consistent with her reported symptoms. *Id.* Finally, Dr. Predina opined that Simerman has symptoms consistent with major depressive disorder, indicating she will "likely struggle to get along with her supervisors and coworkers due to her mental health issues on a job." *Id.*

The ALJ "considered Dr. Predina's opinions about the claimant's ability to interact with others, concentrate/persist, and remember tasks while working . . . ." (AR 20). The ALJ found that the medical evidence in the record "establishes mild limitations," and noted that Simerman has never gone to the emergency department or required inpatient care as a result of her mental impairments. *Id.* The ALJ did not include any mental limitations in the RFC. (AR 22). Simerman asserts that this analysis of Dr. Predina's opinion does not meet the requirements of 20 C.F.R. § 404.1520c.

As an initial matter, the ALJ improperly equates memory functioning with concentration. The ALJ found that "despite the claimant's concentration difficulties," Dr. Predina found that Simerman's score on the Wechsler Memory Scale – Fourth Edition did not suggest the presence of significant deficits in memory functioning. (AR 20). The ALJ then found that Simerman had no more than mild limitations in concentrating, persisting, and maintaining pace. However, Dr. Predina found that Simerman's ability to sustain concentration and persistence appeared impaired while separately indicating that she did not have significant deficits in memory functioning. (AR 424). The ALJ improperly equated Simerman's memory functioning with her ability to concentrate, persist, and maintain pace.

Moreover, Dr. Predina's opinion related to Simerman's depression symptoms and limitations in concentrating, persisting, and maintaining pace is supported by treatment notes in the record. The ALJ did not discuss how Dr. Predina's opinion is supported by the record. In September 2019, Simerman presented with anxious and sad affect, depressed mood, fair attention and concentration, and experienced "some word finding difficulty." (AR 403). In May 2020, it was noted that she "would often lose track of where she was in conversation, [had] difficulty finding the words she needed and had difficulty with sustained concentration." (AR 406). In neurology treatment notes, her concentration was noted to be

6

poor.  (AR 310, 330).  While there are minimal treatment notes in the record related to Simerman's mental health impairments, given that such treatment notes reflect repeated difficulties with concentration, the ALJ failed to properly consider how Dr. Predina's opinion is supported by the record.

The ALJ also relied on Simerman's sporadic mental health treatment, but she testified at the hearing that her counselor did not offer video visits, and therefore she was unable to receive treatment during the pandemic.  (AR 52).  The ALJ stated that Simerman "testified to no further mental health treatment, including no video talk therapy sessions."  (AR 20).  However, the ALJ failed to consider that Simerman testified that she received no further mental health treatment because it was not available to her during the pandemic.  (AR 52).  The ALJ erred by mischaracterizing Simerman's lack of mental health treatment and using that mischaracterization to discredit Dr. Predina's opinion.

Relatedly, Simerman asserts that the ALJ's RFC analysis does not properly consider whether Simerman's depression caused any limitations.  More specifically, Simerman argues that the ALJ failed to consider the interrelated nature of Simerman's mental health impairments with her MS and chronic pain.

The RFC is "the individual's *maximum* remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis," meaning eight hours a day, for five days a week. SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996) (second emphasis omitted).  That is, the "RFC is not the *least* an individual can do despite his or her limitations or restrictions, but the *most*."  *Id.*; *see also Young*, 362 F.3d at 1000-01; 20 C.F.R. § 404.1545(a)(1).

> The [RFC] assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence.

SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996); *see* 20 C.F.R. § 404.1545(a)(3).  Therefore, when determining the RFC, the ALJ must consider all medically determinable impairments, mental and physical, even those that are non-severe.  20 C.F.R. § 404.1545(a)(2); *see also Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008).

"[T]he expression of a claimant's RFC need not be articulated function-by-function; a narrative discussion of a claimant's symptoms and medical source opinions is sufficient."  *Knox v. Astrue*, 327 F.

7

App'x 652, 657 (7th Cir. 2009) (citations omitted) (finding that the ALJ "satisfied the [RFC] discussion requirements by analyzing the objective medical evidence, [the claimant's] testimony (and credibility), and other evidence"). "The ALJ need not provide a written evaluation of every piece of evidence, but need only 'minimally articulate' [her] reasoning so as to connect the evidence to [her] conclusions." *Id.* at 657-58 (citing *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004)); *see also Catchings v. Astrue*, 769 F. Supp. 2d 1137, 1146 (N.D. Ill. 2011).

"An ALJ must evaluate all relevant evidence when determining an applicant's RFC, including evidence of impairments that are not severe." *Arnett*, 676 F.3d at 591 (citing 20 C.F.R. § 404.1545(a); *Craft*, 539 F.3d at 676). "An ALJ must also analyze a claimant's impairments in combination" when determining the RFC. *Id.* (citing *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009)). "For example, obesity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing." SSR 02-1P, 2002 WL 34686281, at *5 (Sept. 12, 2002). While an ALJ "need not mention every snippet of evidence in the record, the ALJ must connect the evidence to the conclusion; in so doing, [she] may not ignore entire lines of contrary evidence." *Arnett*, 676 F.3d at 592 (citations omitted). Again, the burden is on the claimant to specify how the non-severe impairment, in combination with other impairments, impaired her ability to work. *Prochaska v. Barnhart*, 454 F.3d 731, 737 (7th Cir. 2006) (citing *Skarbek v. Barnhart*, 390 F.3d 500, 504, 105 Fed. Appx. 836 (7th Cir. 2004)).

The record clearly indicates that Simerman's depression started when she was diagnosed with MS, and her MS symptoms exacerbate her depression symptoms. (AR 388, 403-04, 406). Simerman also testified to pain throughout her body that occurs daily due to her MS. (AR 57). The ALJ noted that Simerman was complaining of continuous pain from March 2021 through June 2021. (AR 26). Yet the ALJ failed to consider how her chronic pain and her MS symptoms might exacerbate her depression symptoms and interfere with her concentration, despite the supporting evidence in the record. "While a mild, or even a moderate, limitation in an area of mental functioning does not *necessarily* prevent an individual from securing gainful employment, the ALJ must still affirmatively *evaluate* the effect such mild limitations have on the claimant's RFC." *Simon-Leveque v. Colvin,* 229 F. Supp. 3d 778, 787 (N.D.

8

Ill. 2017) (remanding when the ALJ failed to explain why mild limitations in mental functioning did not require RFC limitations (citing *Sawyer v. Colvin*, 512 F. App'x 603, 611 (7th Cir. 2013))). The ALJ failed to explain why Simerman's mild mental impairments did not require RFC limitations, and she failed to properly consider the combined effects of her depression and physical symptoms. The combined errors of the ALJ's failure to properly consider and weigh Simerman's mental impairments requires remand.

The ALJ also erred in finding the state agency medical consultants' opinions to be persuasive in finding Simerman capable of light work. The ALJ relied on a physical consultative examination from July 2020 that showed normal gait, station, posture, stamina, and straight leg raise to support her reliance on the state agency opinions. (AR 26).

The state agency opinions were provided in August and November of 2020. (AR 82, 99). At the reconsideration level, the most recent evidence provided was from September 2020. (AR 88). However, new imaging was obtained in April 2021, which indicated her back impairment was worsening. (AR 529-30). The new imaging showed a 4.7mm soft tissue nodule "favored to represent a schwannoma,"[1] as well as severe canal stenosis at L4-L5 and compression of the descending right S1 nerve root at the level of L5-S1. (AR 530). No medical professional reviewed this imaging, and the ALJ did no more than report the objective findings of the imaging and the physical examination from April 2021. (AR 26). As noted by the ALJ, the April 2021 physical examination showed the following positive tests: bilateral straight leg raise, bilateral facet subjective tenderness, bilateral lumbar paraspinal tenderness, bilateral lumbar paraspinal spasms, bilateral Patrick's test, bilateral facet loading, and bilateral sacroiliac joint tenderness. *Id.* Simerman also presented with limited range of motion in her lumbar spine and decreased sensation. *Id.* The ALJ provided no analysis of the imaging or the April 2021 physical examination, and instead relied on medical opinion evidence that did not have access to this new evidence. (AR 26-27). The new imaging and physical examination include potentially decisive evidence indicating Simerman's

---

[1] A schwannoma is a nerve tumor on the nerve sheath and can lead to nerve damage and loss of muscle control. *See* https://www.mayoclinic.org/diseases-conditions/schwannoma/cdc-20352974 (accessed September 6, 2022). Schwannomas on the spine can cause back pain and radiating pain. *See* https://my.clevelandclinic.org/health/diseases/17877-schwannoma (accessed September 6, 2022).

impairments are worsening, and the new evidence corroborates her subjective symptoms of pain. "[T]he ALJ must seek an additional medical opinion if there is potential decisive evidence that postdates the state agency consultant's opinion." *Kemplen v. Saul*, 844 F. App'x 883, 888 (7th Cir. 2021), as amended in part on reh'g (June 21, 2021). The ALJ failed to do so here.

In sum, the ALJ erred in analyzing Simerman's mental impairments and in relying on outdated medical opinions. As a result, a remand is warranted for reconsideration of Simerman's mental impairments, medical opinions, and their impact on the RFC.[2]

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's decision is REVERSED, and the case is REMANDED to the Commissioner for further proceedings in accordance with this Opinion and Order. The Clerk is DIRECTED to enter a judgment in favor of Simerman and against the Commissioner.

SO ORDERED.

Entered this 6th day of September 2022.

/s/ Susan Collins  
Susan Collins  
United States Magistrate Judge

---

[2] Because a remand is warranted for reconsideration of Simerman's mental impairments, the Court need not reach Simerman's remaining arguments. Such remaining arguments regarding the RFC rest on a proper consideration of her mental impairments, opinion evidence, and errors at step five. Therefore, a proper consideration of Simerman's mental impairments and the medical evidence may impact those remaining arguments.